45 F.3d 1337
 40 ERC 1129, 31 Fed.R.Serv.3d 1075,
25 Envtl. L. Rep. 20,864
 NATIONAL WILDLIFE FEDERATION; Idaho Wildlife Federation,
Plaintiffs-Appellants,
v.
Mike ESPY,* Secretary of the U.S. Department
of Agriculture; La Verne Ausman, Administrator of
Farmers Home Administration; Tracy L.
Baxter, and Sharon L. Baxter,
Defendants-Appellees,
and
Farm Credit Bank of Spokane, Defendant.
 No. 92-35568.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1993.
Submission Vacated Feb. 4, 1994.
Resubmitted Oct. 11, 1994.
Decided Jan. 20, 1995.
 
 Thomas M. France, Nat. Wildlife Federation, Missoula, MT and Marion Yoder, Nat. Wildlife Federation, Bismark, ND, for plaintiffs-appellants.
 Andrea Nervi Ward, U.S. Dept. of Justice, Washington, DC, for defendants-appellees.
 Stephen C. Hardesty, Hawley, Troxell, Ennis & Hawley, Boise, ID, for defendants-appellees.
 Appeal from the United States District Court for the District of Idaho.
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 JAMES R. BROWNING, Circuit Judge:
 
 
 1
 Farmers Home Administration ("FmHA") took title to the Lazy C-H Ranch in Bear Lake County, Idaho, from a delinquent borrower, subject to a mortgage held by Farm Credit Bank of Spokane. The mortgage covered 2,135 acres of the 4,704 acre Ranch, including approximately 730 acres of wetlands.
 
 
 2
 After making payments to the Bank for a number of years, FmHA apparently concluded the debt exceeded the value of the property and quitclaimed the Ranch to the Bank in satisfaction of the debt. The Bank sold the Ranch to Tracy and Sharon Baxter, who currently graze cattle on the Ranch, including the wetlands.
 
 
 3
 The National Wildlife Federation and Idaho Wildlife Federation brought this action against the Secretary of Agriculture, FmHA officials, the Bank, and the Baxters under the Administrative Procedure Act ("APA"), 5 U.S.C. Secs. 701-706, alleging FmHA's transfer of the property to the Bank without creating easements to protect the wetlands violated Section 1813(h)(1) of the Food, Agriculture, Conservation and Trade Act of 1990 ("the 1990 Act"), 7 U.S.C. Sec. 1985(g), and Executive Order 11990, 42 Fed.Reg. 26,961 (1977).[1] The complaint also alleged FmHA's failure to draft an environmental impact statement before transferring the property violated the National Environmental Policy Act (NEPA), 42 U.S.C. Sec. 4332(2)(C).
 
 
 4
 The district court dismissed the action for failure to state a claim, holding: (1) the transfer of the Ranch to the Bank did not trigger FmHA's obligations under the 1990 Act, and even if it did, the court could not provide effective relief; (2) the transfer required no action under NEPA because use of the Ranch did not change; and (3) no cause of action was stated against the Baxters because the APA and other federal statutes invoked by plaintiffs applied only to governmental action. Plaintiffs appeal. We affirm in part and reverse in part.
 
 
 5
 * We decide de novo whether the complaint states a cause of action and if so whether plaintiffs had standing to assert it. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc) (failure to state a claim); Ellis v. City of La Mesa, 990 F.2d 1518, 1523 (9th Cir.1993) (standing). Allegations of fact are taken as true and construed in the light most favorable to the plaintiff. Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.1992) (failure to state a claim); Lujan v. Defenders of Wildlife, --- U.S. ----, ----, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351 (1992) (standing).
 
 II
 
 6
 Although the district court did not consider whether plaintiffs have standing, we must do so. FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, 110 S.Ct. 596, 607-08, 107 L.Ed.2d 603 (1990). The complaint sufficiently alleges each element of standing. See Lujan, 112 S.Ct. at 2136-38.[2] The allegations that several of plaintiffs' members enjoy the aesthetic value of the wetlands and the opportunities they afforded for hiking, hunting, and bird-watching, asserts a legally protected interest sufficient for standing. Id. (citing Sierra Club v. Morton, 405 U.S. 727, 734-35, 92 S.Ct. 1361, 1365-66, 31 L.Ed.2d 636 (1972)); National Wildlife Federation v. ASCS, 941 F.2d 667, 670-71 (8th Cir.1991). Injury to this interest and causation are reflected in allegations that (1) "FmHA declined to establish conservation easements on the property conveyed to the Bank," (2) "[the Baxters] are now grazing cattle in the wetland areas without observing the restrictions [which conservation easements would have imposed]," (3) "[i]n the absence of conservation easements, the Baxters will continue to graze cattle in the wetlands on the Lazy C-H Ranch," and (4) "[u]nrestricted grazing will degrade the fragile riparian wetlands and injure plaintiffs' members." Complaint, pp 21-23.[3] Redressability is asserted in an allegation that "[a]n order rescinding the conveyance of the [Ranch] to the [Bank] (and its subsequent sale to the Baxters) and compelling FmHA to establish conservation easements as required by Executive Order 11990 and 7 U.S.C. Sec. 1985(g) will prevent wetland destruction and irreparable injury to plaintiffs." Complaint, p 24.[4]
 
 III
 
 7
 Section 1813(h)(1) of the 1990 Act provides:
 
 
 8
 [I]n the disposal of real property under this section, the Secretary [of Agriculture] shall establish perpetual wetland conservation easements to protect and restore wetlands or converted wetlands that exist on inventoried property....
 
 
 9
 7 U.S.C. Sec. 1985(g)(1).
 
 
 10
 The parties do not dispute that the Ranch was "inventoried property" within the meaning of Sec. 1985(g), and that it contains "wetlands." They differ only as to whether FmHA's conveyance of the Ranch to the Bank in satisfaction of the debt constituted a "disposal" of the property. If the conveyance was a "disposal," FmHA violated Sec. 1985(g) by failing to impose wetland conservation easements before transferring title.
 
 
 11
 FmHA argues that "disposal" of real property refers only to sale or lease of the property. The district court agreed. The court held FmHA's transfer of title to the Bank was an "abandonment" of the Ranch rather than a "disposal," and FmHA therefore had no obligation to establish wetland conservation easements.
 
 
 12
 Even accepting FmHA's premise that "disposal" under Sec. 1985(g) is limited to sales and leases, FmHA's conveyance of the Ranch to the Bank clearly constituted a "disposal." FmHA offered title to the Ranch to the Bank in exchange for forgiveness of a debt totaling $206,222.50, and the Bank accepted FmHA's quitclaim deed as payment of that debt in full. FmHA did not abandon its property interest in the Ranch; it transferred that interest to the Bank in return for significant consideration. FmHA agrees there would have been a "disposal" of the property within the meaning of Sec. 1985(g) if FmHA had sold the Ranch to a third party and repaid the debt to the Bank with the proceeds. The actual transaction was in substance no different. FmHA simply bypassed the third party and exchanged the Ranch directly with the Bank for forgiveness of the debt. Under any rational definition of "sale," FmHA sold the Ranch to the Bank.[5]
 
 
 13
 FmHA argues that when inventoried property is burdened by a prior lien, FmHA's decision as to whether to impose wetland conservation easements under Sec. 1985(g) is discretionary and therefore not subject to judicial review. See 5 U.S.C. Sec. 701(a)(2). FmHA notes that as a practical matter it could not impose wetland conservation easements on the Ranch without first repaying the Bank's prior lien. See E.J. Friedman Co., Inc. v. United States, 6 F.3d 1355, 1356 (9th Cir.1993) (foreclosure by a superior lienholder eliminates junior interests). FmHA argues the decision to expend government funds to repay a prior lienholder is committed to agency discretion, and therefore FmHA is not required to establish wetland conservation easements on any inventoried property that is burdened by a lien.
 
 
 14
 Congress used mandatory language in directing FmHA to impose wetland conservation easements on inventoried property. 7 U.S.C. Sec. 1985(g). FmHA's discretion to weigh the economic value of inventoried property against the environmental value of establishing wetland conservation easements on such property is limited by this express command of the statute.[6] FmHA must impose wetland conservation easements on inventoried property in disposing of the property, even if it must repay a prior lien to do so.[7]
 
 IV
 
 15
 Plaintiffs seek an order rescinding FmHA's conveyance of the Ranch, restoring title to the Ranch to FmHA, and forbidding FmHA from disposing of the property without imposing wetland conservation easements pursuant to Sec. 1985(g). The district court concluded Idaho statutes regarding rights and duties under conservation easements, see Idaho Code Sec. 55-2102, precluded the court from granting the relief sought. The district court erred in concluding its power to grant relief was limited by state law. Plaintiffs seek declaratory and injunctive relief under a federal statute which empowers a federal court to "compel agency action unlawfully withheld," and to "hold unlawful and set aside agency action ... in excess of statutory jurisdiction, authority, or limitations, or short of statutory right...." 5 U.S.C. Sec. 706(1), (2)(C). These provisions authorize the district court, in the exercise of its jurisdiction under the federal statute, to void a property transaction and order a transfer of title where necessary. Burbank Anti-Noise Group v. Goldschmidt, 623 F.2d 115, 116 (9th Cir.1980).
 
 
 16
 In Goldschmidt a citizens' group brought suit under NEPA to enjoin the federally-financed sale of an airport until an environmental impact statement could be completed. The district court entered summary judgment against plaintiffs, and the sale was completed. On appeal, defendants argued completion of the sale rendered the case moot because the court could no longer fashion an appropriate remedy. We rejected this argument:[T]he actions here can be undone.... [A]ll parties to the transactions are before the Court. If appellants were to prevail on the merits of this appeal, this Court could remand with instructions to the District Court to order a transfer of the Airport title back to [the original owner]....
 
 
 17
 Id. See also In re Spirtos, 992 F.2d 1004, 1006-07 (9th Cir.1993); NL Industries, Inc. v. Secretary of the Interior, 777 F.2d 433, 436 (9th Cir.1985).
 
 
 18
 Although the district court has power to do so, it is not required to set aside every unlawful agency action. The court's decision to grant or deny injunctive or declaratory relief under APA is controlled by principles of equity. Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 673 (9th Cir.1993); Sierra Pacific Industries v. Lyng, 866 F.2d 1099, 1111 (9th Cir.1989). The district court must weigh "the competing claims of injury ... and the effect on each party of the granting or withholding of the requested relief." Amoco Production Co. v. Village of Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 1402, 94 L.Ed.2d 542 (1987). The competing claims of injury in this case include such factors as the effect of rescinding title on the expectations of future property buyers, the good faith or innocence of the Baxters, and the time that has elapsed since FmHA transferred title. The Baxters assert the first two factors preclude granting the relief plaintiffs seek. They assert they acted in good faith and purchased the Ranch free and clear of any wetland conservation easements and argue that granting the requested relief would require rescinding a transaction valid under Idaho property law and disrupting the expectations of those who rely on such law.
 
 
 19
 A federal court will not lightly employ the power of equity to disrupt good faith reliance on state property law. When reviewing a denial of a motion to dismiss, however, we must accept the facts alleged in the complaint as true. The plaintiffs allege "the Baxters were fully apprised of the controversy concerning wetland easements prior to the sale," and add in their papers that the Bank and the Baxters "forced the wetlands easement notice provisions to be removed from the title commitment papers prior to auction." If these allegations are true, the Baxters took title to the land with notice of FmHA's obligation under federal law to protect the wetlands. In these circumstances, granting the relief sought would not defeat the expectations of innocent parties or undermine state property law.[8]
 
 V
 
 20
 NEPA requires federal agencies to prepare a detailed environmental impact statement ("EIS") for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. Sec. 4332(2)(C). "[W]here a proposed federal action would not change the status quo," however, "an EIS is not necessary." Upper Snake River v. Hodel, 921 F.2d 232, 235 (9th Cir.1990). FmHA alleges that because the wetlands were used for grazing before it acquired the Ranch and are now used for that purpose by the Baxters, FmHA's transfer of the title did not alter the status quo and therefore was not subject to requirements of NEPA. We agree. See Goldschmidt, 623 F.2d at 117 (agency's decision to finance an airport did not require an EIS since the airport already existed); City of San Francisco v. United States, 615 F.2d 498, 501 (9th Cir.1980) (Navy's decision to lease a shipyard did not require an EIS since the use of the facility did not change). Compare National Forest Preservation Group v. Butz, 485 F.2d 408, 411 (9th Cir.1973) (an agency must prepare an EIS before it grants empty land to a company that plans to build a recreational development).
 
 
 21
 Plaintiffs contend FmHA's decision to dispose of the Ranch was discretionary, and FmHA was required to prepare an EIS for this reason alone. An EIS is normally not required where agency action is mandatory, see Forelaws on Board v. Johnson, 743 F.2d 677, 681 (9th Cir.1984) (collecting cases), but the converse is not true: agency action does not require an EIS simply because the action is discretionary. Discretionary agency action that does not alter the status quo does not require an EIS. Upper Snake River, 921 F.2d at 235. The complaint alleges FmHA's disposal of the Ranch will result in but one injury--continued degradation of the wetlands from grazing. It is not alleged that the disposal will add to that harm.
 
 VI
 
 22
 The Baxters insist plaintiffs cannot state a claim against them under APA, the 1990 Act, or NEPA because none of these statutes provides a cause of action by one private party against another. Plaintiffs argue that the Baxters were properly joined in this action under the reasoning of Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir.1988).
 
 
 23
 In Hodel, the Sierra Club brought suit under APA against both the Bureau of Land Management ("BLM") and Garfield County, Utah, to prevent the County from widening a road running through federal land unless BLM approved the project under Sec. 302(b) of the Federal Land Policy and Management Act, 43 U.S.C. Sec. 1732(b). The Tenth Circuit held the County was properly joined in the action, because "[i]f Sierra Club had not joined Garfield County as a party, then this would be a paradigm case for applying Federal Rule of Civil Procedure 19 [providing for mandatory joinder of indispensable parties]." Hodel, 848 F.2d at 1077.[9] The Tenth Circuit also noted that because BLM was required to enjoin actions that threatened federal lands, "a decision favorable to the [Sierra Club] would impose a duty on the [BLM] to enjoin the developer. In the formal alignment of the parties, the developer [is] denoted as [a] defendant[ ], but substantively [it is a] third-party defendant[ ] who could have been impleaded by the federal agenc[y]." Id. at 1077. In these circumstances, the court held the Sierra Club could join the County in the action, even though it did not have a direct cause of action against the County under APA. Id. at 1078.
 
 
 24
 The Rule 19 factors are satisfied in this case as in Hodel. Plaintiffs cannot obtain complete relief unless the Baxters are prevented from harming the wetlands on the Ranch; the Baxters absence would impair their ability to defend the interest they claim in the Ranch by demonstrating that they purchased the Ranch in good faith; and if the Baxters were not bound by the outcome of this case and sought relief at variance with the judgment in this case, FmHA would face a substantial risk of inconsistent obligations. Moreover, if the district court ordered re-transfer of title to FmHA, FmHA would be required to bring suit against the Baxters if necessary to protect the wetlands from unrestricted grazing. See 7 U.S.C. Sec. 1997(g) (granting Secretary power to enforce easements); 7 C.F.R. Sec. 1955.61 (requiring FmHA to protect inventoried property from trespassers and to file suit against such trespassers when necessary).
 
 
 25
 The Baxters urge us to follow Vieux Carre Property Owners v. Brown, 875 F.2d 453 (5th Cir.1989). In Vieux, a group of landowners brought suit under APA to enjoin a development project because the Army Corps of Engineers failed to issue a permit for the project. The landowners alleged claims under APA against both the Corps and the city officials who authorized the development. The court held the landowners could bring a claim against the Corps under APA but affirmed the dismissal of the claims against the city officials. It distinguished Hodel in part on the ground that "unlike the situation in [Hodel ] as to the BLM, no statute requires the Corps to enforce the [statutory] provision the [landowners] claim was violated here. In fact, [the statute] explicitly vests that authority in the Attorney General." Id. at 457. In the present case, FmHA has an obligation to enforce easements imposed under Sec. 1985(g) and to protect wetlands on inventoried property from interference by private parties. Thus, this case is like Hodel and unlike Vieux, and the Baxters were properly joined in the action. See also Beverly Hills Federal Savings and Loan Ass'n v. Webb, 406 F.2d 1275, 1279 (9th Cir.1969) ("[A] person may be joined as a party for the sole purpose of making it possible to accord complete relief between those who are already parties, even though no present party asserts a grievance against such person").[10]
 
 VII
 
 26
 Plaintiffs have properly alleged standing. The district court's dismissal of the NEPA claim is affirmed. Dismissal of the claim alleging a violation of the Food, Agriculture, Conservation and Trade Act is reversed. The Baxters are proper parties to this suit. On remand, the district court must determine whether the equitable relief sought by plaintiffs is appropriate. The court should consider in particular whether the Baxters were aware before they bought the Ranch that it was the subject of a wetlands easement dispute and therefore bought the property with notice.
 
 
 27
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 *
 Pursuant to Fed.R.App.P. 43(c)(1), Mike Espy has been substituted for his predecessor in office, Edward Madigan
 
 
 [1]
 Executive Order 11990 and related regulations simply require FmHA to restrict the use of wetlands in accordance with other laws. See 7 C.F.R. Sec. 1955.137(a)(1). Since plaintiffs have not identified any law relevant to this case other than Sec. 1985(g), we do not address the Executive Order separately
 
 
 [2]
 To satisfy the "irreducible constitutional minimum of standing,"
 [f]irst, the plaintiff must have suffered an "injury in fact"--an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."
 Lujan, --- U.S. at ----, 112 S.Ct. at 2136 (citations omitted).
 
 
 [3]
 FmHA argues that plaintiffs have not sufficiently alleged that its actions caused injury to them because the wetlands were used for grazing before FmHA acquired the Ranch just as they are today, and because "traditional land use practices" such as grazing do not interfere with enjoyment of the aesthetic value of the wetlands. However, the 1990 Act requires that wetlands conservation easements be imposed before inventoried property is disposed of even if the wetlands were historically used for haying and grazing. 7 U.S.C. Sec. 1985(g)(4). Plaintiffs need not allege use of the wetlands has changed because of FmHA's failure to establish a conservation easement, but only that the agency's illegal action has "continuing, present adverse effects" on plaintiffs' members. Lujan, --- U.S. at ----, 112 S.Ct. at 2138 (citation omitted)
 
 
 [4]
 FmHA contends that even if the requested relief were granted, the Bank could foreclose its prior lien and take title free of the easement. There is nothing in the present record to support the assumption that FmHA would stop making payments on the mortgage if it regained title to the Ranch. To the extent FmHA's argument also goes to the merits of the claim it is addressed below
 
 
 [5]
 We do not decide whether FmHA's interpretation of Sec. 1985(g) is correct. We simply hold that even under that interpretation, FmHA triggered Sec. 1985(g) when it transferred title to the Ranch to the Bank
 
 
 [6]
 FmHA regulations provide FmHA may make payments on prior liens unless it determines that continuing to do so is "no longer in the best interest of the Government," 7 C.F.R. Sec. 1955.67(a), and that a lien may be paid in full when payment is "in the best interest of the Government." 7 C.F.R. Sec. 1955.67(b). By imposing the mandatory duty to create wetland conservation easements, however, Congress has conclusively determined that paying a prior lien when necessary to protect wetlands on inventoried property is in the "best interest of the Government."
 
 
 [7]
 At oral argument, FmHA suggested that Congress did not intend FmHA to spend taxpayers' money to create wetland conservation easements. Whenever FmHA imposes an easement on inventoried property, it decreases the economic value of the property and therefore costs the government money. From taxpayers' perspective, it makes no difference whether FmHA pays for wetland conservation easements by devaluing property or by repaying a prior lienholder
 
 
 [8]
 Granting the relief requested would not prevent the Baxters and the Bank from seeking appropriate relief from each other or the government. See Conner v. Burford, 848 F.2d 1441, 1461 (9th Cir.1988)
 
 
 [9]
 Rule 19(a) provides that a court must join a party if:
 (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.
 The Hodel court found that each of these factors was present.
 
 
 [10]
 Plaintiffs also rely on League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 558 F.2d 914 (9th Cir.1977), in which a citizens' group claimed a regional agency violated its mandate by authorizing the development of various projects and sought to enjoin the private developers. We held the citizens' group had an independent cause of action against the developers. Id. at 917. Plaintiffs in this case concede, however, that neither the 1990 Act nor NEPA provides such a cause of action