ORDER
 

 CONSUELO BLAND MARSHALL, District Judge.
 

 This matter is before the Court on cross-motions for summary judgment filed by each remaining party to this action: Plaintiff Jack Kevorkian, M.D.; Plaintiff John Doe; and Defendant Daniel E. Lungren. The Court, the Honorable Consuelo B. Marshall, United States District Judge, presiding, has considered the motion papers, counsel arguments, and the evidence, and based thereupon, issues the following order:
 

 THE REMAINING PARTIES
 

 1. Plaintiff John Doe
 

 John Doe is 85 years old and was first diagnosed as HIV positive in July, 1984. He was diagnosed as having AIDS on January 1, 1993. John Doe is in the advanced final stages of his disease and has been advised by his physician that his condition is terminal, though the exact amount of time left to him is necessarily an estimate. John Doe currently suffers from a T-cell count of 12 (normal being about 1000), leading to chronic fatigue. He also suffers from several as yet undiagnosed viruses which his immune systems lacks the ability to defeat. Recently, John Doe has been diagnosed as suffering from cytomegalovirus retinitis and has a catheter in his right arm for its treatment. However, this is a progressive degenerative disease of the optic nerve and will eventually destroy plaintiffs eyesight, preventing him from practicing his profession as a video editor.
 

 John Doe is mentally competent and aware of the nature of his diseases and likely progress. In addition, John Doe contends that he has “seen his peers die without dignity and in horrible pain, and he does not want that fate to befall him.” (Complaint, p. 22, ¶52.) John Doe wishes to obtain physician aid in dying.
 

 2. Dr. Jack Kevorkian, M.D.
 

 Dr. Kevorkian was issued California Physicians and Surgeons certificate No. C19165 on November 18,1957. Dr. Kevorkian’s medical license, however, was revoked on June 29, 1994 in default proceedings based on the fact that (1) he had been disciplined by the Mchigan Board of Medicine and (2) he had assisted five patients to commit suicide.
 

 On September 7,1994, Dr. Kevorkian filed a petition for writ of administrative mandamus in the Los Angeles County Superior Court, seeking judicial review of the default decision. The Superior Court dismissed with leave to amend on the grounds that Dr. Kevorkian had neither exhausted his administrative remedies nor alleged that it was futile to do so. Dr. Kevorkian has appealed the ruling.
 

 3. Attorney General Daniel E. Lungren
 

 Attorney General Lungren is the chief law enforcement officer in the State of California. He possess discretion to initiate criminal prosecutions and general supervisory powers over the district attorneys in the state.
 

 CALIFORNIA’S STATUTE PROHIBITING ASSISTED SUICIDE
 

 California law does not criminalize suicide.
 
 In re Joseph G.
 
 34 Cal.3d 429, 194 Cal.Rptr. 163, 667 P.2d 1176 (1983). California law also permits an individual to refuse or require the withdrawal of life-sustaining treatment.
 
 Bouvia v. Superior Court,
 
 179 Cal.App.3d 1127, 225 Cal.Rptr. 297 (1986),
 
 review denied,
 
 (June 5, 1986) (competent individuals have a right to refuse medical treatment that sustains life);
 
 see also People v. Adams
 
 216 Cal.App.3d 1431, 265 Cal.Rptr. 568 (1990),
 
 review denied,
 
 (April 19, 1990) (a person has a constitutionally protected interest in refusing unwanted medical treatment or procedures). This right to refuse treatment or life-sustaining measures has not been limited to those who are terminally ill.
 
 See Bartling v. Superior Court,
 
 163 Cal. App.3d 186, 209 Cal.Rptr. 220 (1984) (seriously ill patient may refuse treatment).
 

 
 *728
 
 However, California law criminalizes those who aid a person in committing suicide. Cal.Penal Code § 401 states:
 

 Every person who deliberately aids, or advises, or encourages another to commit suicide, is guilty of a felony.
 

 QUESTIONS PRESENTED
 

 These cross-motions for summary judgment have been brought on numerous grounds: (1) whether Plaintiffs lack standing to assert their claims; (2) whether Eleventh Amendment immunity applies; (3) whether Cal.Penal Code § 401 facially violates the Due Process Clause of the Federal Constitution; (4) whether CalJPenal Code § 401 violates the Equal Protection Clause of the Federal Constitution; (5) whether Cal.Penal Code § 401 facially violates the right to privacy under the California Constitution; and (6) whether Cal.Penal Code § 401 violates the Equal Protection Clause of the California Constitution.
 

 ANALYSIS
 

 1. STANDING
 

 The Court will address first the Attorney General’s challenge to Plaintiffs’ standing. The Court finds that John Doe has standing but that Dr. Jack Kevorkian does not.
 

 As required by Article III of the United States Constitution, this Court must determine at the threshold whether Plaintiffs present an “actual controversy.”
 
 Steffel v. Thompson,
 
 415 U.S. 452, 468-69, 94 S.Ct. 1209, 1220-21, 39 L.Ed.2d 505 (1974). A patient may challenge the constitutionality of a statute criminalizing the conduct of the physician even though the patient is not the direct object of the criminal statute.
 
 Roe v. Wade,
 
 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973);
 
 see also, Idaho Farm Bureau Federation v. Babbitt,
 
 58 F.3d 1392 (9th Cir. 1995);
 
 National Wildlife Federation v. Espy,
 
 45 F.3d 1337 (9th Cir.1995). Moreover, after examining the pleadings and evidence, this Court concludes that Plaintiff John Doe has standing to challenge the constitutionality of the statute because the Attorney General has not stated affirmatively that his office will not enforce the statute.
 
 See Bland v. Fessler,
 
 88 F.3d 729 (9th Cir.1996) (although Attorney General has never enforced a civil statute, without affirmative denial of enforcement plaintiff has standing). Thus, John Doe has standing to bring this action even though he is not the direct object of Cal.Penal Code § 401.
 

 As a general principle, physicians have been found to have standing to assert the rights of their patients because of the special nature of the physician-patient relationship.
 
 See e.g., Doe v. Bolton,
 
 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973) (physician may assert rights of patient in abortion context). Thus, although courts recognize that the actual right asserted resides with the patient, physicians have standing to assert the rights of their patients challenging the constitutionality of a criminal physician-assisted suicide statute even though they have not been prosecuted, or threatened with prosecution, for violation of the statute.
 
 Compassion in Dying v. State of Washington,
 
 79 F.3d 790 (9th Cir.1996),
 
 stay granted Washington v. Glucksberg,
 
 — U.S. -, 116 S.Ct. 2494, 135 L.Ed.2d 187 (1996),
 
 reh’g en banc by full court denied, Compassion in Dying v. State of Washington,
 
 85 F.3d 1440 (1996),
 
 cert. filed,
 
 65 U.S.L.W. 3085 (July 03, 1996) (No. 96-110);
 
 see also Quill v. Koppell,
 
 870 F.Supp. 78 (S.D.N.Y.1994). Dr. Kevorkian, however, is not licensed to practice in the State of California. Thus, he does not have standing to challenge the constitutionality of CalJPenal Code § 401 as a physician.
 
 [1]
 

 Although Dr. Kevorkian and John Doe both challenge the constitutionality of Cal.Penal Code § 401 under federal and state law, their claims relative to this statute differ according to their circumstances: John Doe asserts the right to receive medical assistance from a physician in committing suicide; Dr. Kevorkian asserts claims on behalf of his •patients to medically assisted suicide and
 
 *729
 
 also Ms own right to practice medicine. To the extent, then, that Dr. Kevorkian’s and John Doe’s claims vary, tMs Court will only reach those claims asserted by John Doe.
 

 2. ELEVENTH AMENDMENT IMMUNITY
 

 Eleventh Amendment immunity “may be raised at any point in a proceeding.”
 
 Pennhurst State School & Hospital v. Halderman,
 
 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)
 
 citing, Ford Motor Company v. Department of Treasury of Indiana,
 
 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945). It is, therefore, proper that tMs Court analyze Defendant’s immunity claims at tMs time.
 

 The Eleventh Amendment bars federal courts from entertaining suits brought by a private party against a state or its instrumentalities in the absence of state consent.
 
 Los Angeles Branch NAACP v. Los Angeles Unified School Dist.,
 
 714 F.2d 946, 950 (9th Cir.1983),
 
 cert. denied,
 
 467 U.S. 1209, 104 S.Ct. 2398, 81 L.Ed.2d 354 (1984). However, the Eleventh Amendment does not bar actions seeking only prospective declaratory or injunctive relief against state officers in their official capacities.
 
 Ex Parte Young,
 
 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908);
 
 Long v. Van de Kamp,
 
 961 F.2d 151 (1992). The claims in tMs action fall squarely within tMs exception to Eleventh Amendment immumty.
 

 Under Ex
 
 Parte Young,
 
 the state officer sued “must have some connection with the enforcement of the [allegedly unconstitutional] act.”
 
 Id.
 
 at 157. Lungren argues that as the Attorney General he does not have sufficient connection to the enforcement of Cal.Penal Code § 401 because he only has “general supervisory powers” over the district attorneys under Cal.Gov’t Code §§ 12550,
 
 et seq.,
 
 and 26501.
 

 Califorma Government Code § 12550, however, gives the Attorney General more than supervisory powers. Section 12550 provides that:
 

 The Attorney General has direct supervision over the district attorneys ... and may require of them written reports as to the condition of public business entrusted to their charge.
 

 When he deems it advisable or necessary in the public interest, or when directed to do so by the Governor, he shall assist any district attorney in the discharge of his duties, and may, where he deems it necessary,
 
 take full charge
 
 of any investigation or
 
 prosecution
 
 of violations of law of wMch the superior court has jurisdiction. In tMs respect
 
 he has all the powers of a district attorney,
 
 including the power to issue or 'cause to be issued subpoena or other process.
 

 (emphasis added) Cal.Gov’t Code § 12550.
 

 Because the Attorney General has all the powers of a district attorney in prosecuting violations of law, he has sufficient connection with the enforcement of Cal.Penal Code § 401. Thus, the Court finds that tMs action is not barred by the Eleventh Amendment.
 

 3. DUE PROCESS CLAUSE OF FEDERAL CONSTITUTION:
 

 TMs Court has been asked to determine whether there is a constitutional right to assisted suicide found under the liberty interest of the Due Process Clause of the Federal Constitution and whether that right is “facially”
 
 [2]
 
 violated by CaLPenal Code § 401.
 
 [3]
 

 a. Protected liberty interest:
 

 The Ninth Circuit has recently acknowledged a protected Fourteenth Amendment liberty interest “in controlling the time and manner of one’s death.”
 
 Compassion in Dying,
 
 79 F.3d at 816. TMs liberty interest stems from the right of an individual to “define one’s own concept of existence, of meaning, of the universe, and of the mystery of human life.”
 
 Id.
 
 at 813,
 
 citing Planned
 
 
 *730
 

 Parenthood v. Casey,
 
 505 U.S. 833, 851, 112 S.Ct. 2791, 2806-07, 120 L.Ed.2d 674 (1992). In other words, decisions as to when and how to end one’s life, like those personal decisions involving abortion, are “the most intimate and personal choices a person may make in a lifetime ... [choices] central to personal dignity and autonomy.”
 
 Id.
 
 at 813-14.
 

 b. Standard of review
 

 The standard of review generally applied to facial challenges was announced in
 
 U.S. v. Salerno,
 
 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The test set forth requires a plaintiff to demonstrate that “no set of circumstances exists under which the [law] would be valid.”
 
 Id.
 
 at 745, 107 S.Ct. at 2100.
 

 Notwithstanding this apparently straightforward standard, courts and commentators have become increasingly cognizant of the Court’s deviation from this requirement.
 
 See
 
 Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan.L.Rev. 235 (1994). Although the Ninth Circuit’s opinion in
 
 Compassion in Dying
 
 dealt with an “as applied” constitutional challenge to the Washington statute in question, the court nonetheless agreed that the Supreme Court has not consistently applied the
 
 Salerno
 
 test in cases involving abortion: “it is clear that [the Supreme Court] has applied a different test for judging the constitutionality of statutes restricting a woman’s right to secure an abortion.”
 
 Compassion in Dying,
 
 79 F.3d at 798 n. 9. Further, the Ninth Circuit stated that it did not believe the
 
 Salerno
 
 test to be applicable to a facial challenge involving Washington’s statute: “Since the claimed liberty issue in this case is in many respects similar to the liberty issue involved in
 
 Casey, ...,
 
 we believe that the
 
 Salerno
 
 test would not in any event be the appropriate one for adjudicating a facial challenge to Washington’s prohibition on assisted suicide.”
 
 Id.
 

 [4]
 

 In
 
 Casey,
 
 Justices O’Connor, Kennedy and Souter announced that a facial challenge to a statute regulating abortion was to be analyzed by reference to an “undue burden” standard.
 
 Casey,
 
 505 U.S. at 876, 112 S.Ct. at 2820. Under this test, a statute constitutes an undue burden if, “in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman’s choice to undergo an abortion.”
 
 Id.
 
 at 895, 112 S.Ct. at 2830.
 
 [5]
 
 The Court explained that this test was “a standard of general application to which we intend to adhere.”
 
 Id.
 
 at 876, 112 S.Ct. at 2820.
 

 This Court agrees with the Ninth Circuit’s analysis in
 
 Compassion in Dying
 
 and finds the
 
 Salerno
 
 test to be inapplicable to the facial challenge to Cal.Penal Code § 401. Given the similarity between the liberty interests in abortion and assisted suicide, the test announced in
 
 Casey
 
 more closely addresses the constitutional question at issue. Both liberty interests involve decisions that are “central to personal dignity and autonomy,”
 
 Casey,
 
 505 U.S. at 851, 112 S.Ct. at 2807, and implicate the right to be “free from unwarranted government intrusion into matters ... fundamentally affecting a person.”
 
 Id.
 
 at 875, 112 S.Ct. at 2819,
 
 quoting Eisenstadt v. Baird,
 
 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972).
 

 c. Undue burden
 

 In
 
 Casey,
 
 the Court found that Washington’s spousal notification provision relating to abortion constituted an “undue burden” although the statute may have only applied to fewer than one percent of women seeking abortions.
 
 Casey,
 
 505 U.S. at 894, 112 S.Ct. at 2829. Applying this standard, it is clear that CaLPenal Code § 401 places a “substantial obstacle” in a “large fraction of the eases” in which the section is relevant. This conclusion is readily apparent by the fact that § 401 does not merely place some restrictions on the right to assisted suicide, but
 
 categorically prohibits all such conduct.
 
 Accordingly, this Court finds that Cal.Penal
 
 *731
 
 Code § 401 violates the Due Process Clause of the Federal Constitution.
 

 4. EQUAL PROTECTION UNDER THE FEDERAL CONSTITUTION:
 

 Plaintiff also asserts that Cal.Penal Code § 401 denies him equal protection of the law as guaranteed by the United States Constitution because California state law unconstitutionally distinguishes between two similarly situated groups of mentally competent, terminally ill patients. For the reasons outlined below, this Court declines to render an opinion as to the parties’ federal equal protection claims at this time.
 

 First, the Ninth Circuit in
 
 Compassion in Dying
 
 declined to address the parties’ claims under the Equal Protection Clause, finding “[o]ne constitutional violation is enough to support the judgment that is reached here.”
 
 Compassion in Dying,
 
 79 F.3d at 838. Second, two district courts within the Ninth Circuit have analyzed the equal protection issue in the assisted-suicide context and rendered contradictory rulings.
 
 Compare Compassion in Dying,
 
 850 F.Supp. 1454 (W.D.Wa.1994) (applying strict scrutiny standard, court finds violation of Equal Protection Clause)
 
 with Lee v. State of Oregon, supra,
 
 (applying rational relation test). Given the volatility and complexity of these constitutional issues and the fact that Ninth Circuit has recently heard oral argument in the appeal of
 
 Lee v. State of Oregon,
 
 891 F.Supp. 1429 (D.Or.1995),
 
 see Compassion in Dying, denial of rehearing en banc
 
 (dissenting opinion), this Court declines to contribute to the growing confusion in this area of law in the Ninth Circuit and awaits guidance from the Circuit.
 

 Finally, the parties suggest that this court look to the Second Circuit ruling in
 
 Quill v. Vacco,
 
 80 F.3d 716 (2d Cir.1996), for guidance as to this issue. However, because, in contrast to this Circuit’s findings, the Second Circuit has found that competent adult patients do not have a fundamental substantive due process right to physician-assisted suicide, this Court finds
 
 Quill v. Vacco
 
 to be inapplicable.
 

 5. PRIVACY UNDER THE CALIFORNIA CONSTITUTION
 

 This Court has been asked to determine whether Cal.Penal Code § 401 facially violates John Doe’s right to privacy under the California Constitution, Article 1, Section 1.
 

 It is a well-established principle of federalism that in deciding questions of state law, where there is no determinative case law from the California Supreme Court, a federal court must use its best judgment to “ascertain how that Court would decide the issue.”
 
 General Motors Corp. v. Doupnik,
 
 1 F.3d 862 (9th Cir.1993). In doing so, a federal court may not disregard state appellate court decisions unless it is convinced by other persuasive data that the highest court of the state would decide the issue differently.
 
 See Miller v. County of Santa Cruz,
 
 39 F.3d 1030 (9th Cir.1994),
 
 as amended
 
 (December 27, 1994),
 
 cert. denied,
 
 — U.S.-, 115 S.Ct. 2613, 132 L.Ed.2d 856 (1994);
 
 see also Dimidowich v. Bell & Howell,
 
 803 F.2d 1473 (9th Cir.1986),
 
 opinion modified on denial of rehearing, 810 F.2d 1517
 
 (1987).
 

 Although the California Supreme Court has not directly addressed the question of whether California’s right to privacy encompasses a right to assisted suicide, one appellate court has expressly held that it does not. In
 
 Donaldson v. Lungren,
 
 2 Cal.App.4th 1614, 4 Cal.Rptr.2d 59 (1992), the California Court of Appeal for the Second District engaged in a balancing of the competing concerns and held that
 
 “We
 
 cannot expand the nature of Donaldson’s right to privacy to provide a protective shield for third persons who end his life.”
 
 Id.
 
 at 1622, 4 Cal.Rptr.2d 59.
 
 [6]
 
 Similarly, in
 
 Thor v. Superior Court,
 
 5 Cal.4th 725, 21 Cal.Rptr.2d 357, 855 P.2d 375 (1993), the California Supreme Court, citing
 
 Donaldson,
 
 found a “necessary distinction” between one who refuses medical treatment and one who deliberately enlists others to
 
 *732
 
 assist in a suicide.
 
 Id.
 
 at 742, 21 Cal.Rptr.2d 357, 855 P.2d 375.
 
 [7]
 

 Without expressing any opinion on the reasoning in
 
 Donaldson,
 
 this Court is nonetheless compelled to find that there is no persuasive authority to believe that the California Supreme Court would hold otherwise if directly presented with the issue: Thus, until a clear determination is made by the highest court of the state, this Court finds based on principles of federalism that California’s right to privacy does not include a right to assisted suicide.
 

 6. EQUAL PROTECTION UNDER CALIFORNIA LAW
 

 Finally, Plaintiff contends that California’s inconsistent treatment of the terminally ill violates John Doe’s right to equal protection of the laws under the California Constitution. “California has followed the two-tier approach employed by the United States Supreme Court in reviewing legislative classifications under the equal protection clause.”
 
 Graham v. Kirkwood Meadows Pub. Util. Dist.,
 
 21 CalApp.4th 1631, 1642, 26 Cal.Rptr.2d 793 (1994). Under this test, strict scrutiny is applied in cases involving suspect classifications or fundamental rights; rational basis analysis is applied to all other eases.
 
 Id.
 
 Given this Court’s previous findings that California’s right to privacy does not encompass a right to assisted suicide, Cal.Penal Code § 401 does not create a suspect classification or implicate a fundamental right under the California Constitution.
 

 Consequently, the inquiry under the rational basis test is whether the § 401 bears “some rational relationship to a conceivable legitimate state purpose.”
 
 Id.
 
 at 1646, 26 Cal.Rptr.2d 793,
 
 quoting Newland v. Board of Governors,
 
 19 Cal.3d 705, 711, 139 Cal. Rptr. 620, 566 P.2d 254 (1977). Applying this test, the Court finds that the interests articulated by the state constitute a sufficient basis to overcome Plaintiffs equal protection challenge.
 

 BASED ON THE FOREGOING, this Court hereby dismisses Plaintiff Jack Kevorkian from this action for lack of standing. Plaintiff Jack Kevorkian’s motion is therefore moot. Plaintiff John Doe’s motion for summary judgment is hereby GRANTED as to the federal due process claim and DENIED as to the California claims. Accordingly, Defendant Lungren’s motion is DENIED as to the federal due process claim and GRANTED as to the California claims.
 

 IT IS SO ORDERED.
 

 [1]
 

 . While the California statute more broadly criminalizes the actions of
 
 anyone
 
 who assists another in committing suicide, Dr. Kevorkian's claims as set forth in the Second Amended Complaint challenge the statute as a physician and on behalf of his patients.
 

 [2]
 

 . Plaintiff does not challenge the statute "as applied.”
 

 [3]
 

 . Upon further reconsideration of the Ninth Circuit’s
 
 en banc
 
 opinion in
 
 Compassion in Dying,
 
 this Court determines that the relevant constitutional inquiry is whether Plaintiff's due process
 
 liberty
 
 interest is violated. Plaintiff is granted leave to amend the complaint to conform to this change.
 

 [4]
 

 . The district court in
 
 Compassion in Dying v. State of Washington,
 
 850 F.Supp. 1454 (W.D.Wa. 1994) also held that
 
 Salerno
 
 was not applicable to the facial challenge before it.
 

 [5]
 

 . Justices O’Connor and Souter reaffirmed the applicability of the "undue burden" test in
 
 Fargo Women’s Health Organization v. Schafer,
 
 507 U.S. 1013, 113 S.Ct. 1668, 1669, 123 L.Ed.2d 285 (1993).
 

 [6]
 

 . The court in
 
 Donaldson
 
 was specifically asked to decide whether Cal.Penal Code § 401 was violative of California’s right to privacy.
 

 [7]
 

 . Several other appellate courts have also explicitly distinguished suicide from the refusal of unwanted medical treatment.
 
 See e.g. People v. Adams,
 
 216 Cal.App.3d 1431, 1440, 265 Cal. Rptr. 568 (1992);
 
 Bartling v. Superior Court,
 
 163 Cal.App.3d 186, 196, 209 Cal.Rptr. 220 (1984).