110 F.3d 688
 97 Cal. Daily Op. Serv. 2359, 97 Cal. Daily
Op. Serv. 4500,
97 Daily Journal D.A.R. 4231,
97 Daily Journal D.A.R. 7480
CONFEDERATED TRIBES OF SILETZ INDIANS OF OREGON,
Plaintiff-Appellant-Cross-Appellee,
v.
UNITED STATES of America; United States Department of
Interior; Bureau of Indian Affairs; John D.
Leshy, Defendants,
and
United States of America; United States Department of
Interior; Tom Sansonnetti; Bruce Babbitt, Secretary of the
Department of Interior; Ada E. Deer, Assistant Secretary of
the Department of Interior for Indian Affairs,
Defendants-Appellees-Cross-Appellants,
and
John Kitzhaber, Governor of the State of Oregon; State of
Oregon, Defendants-Intervenors-Appellees-Cross-Appellants.
 Nos. 94-35304, 94-35373, 94-35374.
 United States Court of Appeals,Ninth Circuit.
 Argued and Submitted July 10, 1995.
Submission Withdrawn April 4, 1996.
Resubmitted March 20, 1997.
Decided March 31, 1997.
As Amended on Denial of Rehearing and Rehearing En Banc
June 13, 1997.
 
 Craig J. Dorsay, Meyer & Wyse, Portland, OR, for plaintiffs-appellants-cross-appellee.
 David C. Shilton, United States Department of Justice, Washington, DC, for defendants-appellees-cross-appellants.
 Michael D. Reynolds, Assistant Solicitor General and Elizabeth S. Harchenko, Assistant Attorney General, Salem, OR, for defendants-intervenors-appellees-cross-appellants.
 Bruce R. Greene, Greene, Meyer & McElroy, Boulder, CO, for amicus Sault Ste. Marie Tribe of Chippewa Indians.
 Thomas F. Gede, Assistant Attorney General, Sacramento, CA, for amici states.
 Appeals from the United States District Court for the District of Oregon, James M. Burns, District Judge, Presiding. D.C. No. CV-92-01621-JMB.
 Before HUG, Chief Judge, GOODWIN, Circuit Judge, and SCHWARZER,* District Judge.
 HUG, Chief Judge:
 
 
 1
 This appeal concerns the interpretation of a provision of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2719. That Act precludes most gaming on land acquired in trust for an Indian tribe after 1988, unless one of several exceptions applies. The exception pertinent to this case permits such gaming provided (1) that the Secretary of the Interior determines that it is in the best interests of the tribe and not detrimental to the surrounding community and (2) that the Governor of the state concurs in that determination. The Secretary denied the gaming application of the Confederated Tribes of Siletz Indians of Oregon ("the Tribes") because the Governor did not concur in the Secretary's favorable determination. The Tribes brought this action to contest the Secretary's denial of their application. The district court entered summary judgment upholding the denial of the application. The principal issue raised in this case is whether the requirement of the Governor's concurrence violates the Appointments Clause or the separation of powers principles under the United States Constitution. In affirming, we hold that it does not.
 
 I.
 
 2
 The Confederated Tribes of Siletz Indians of Oregon (the "Tribes") contest the denial of their application to have land taken in trust for their benefit for the purpose of establishing a gaming facility. The Secretary of the Interior denied the Tribes' application because, pursuant to 25 U.S.C. § 2719(b)(1)(A) of IGRA, gaming on newly acquired trust land requires the concurrence of the Governor of the state in which the trust land is located, and the Governor of the State of Oregon refused to concur. The Tribes filed in the district court an action seeking reversal of the Secretary's denial of their application and the State of Oregon intervened.
 
 
 3
 The district court found that the Governor's concurrence provision of IGRA, 25 U.S.C. § 2719(b)(1)(A), violates both the Appointments Clause and separation of powers principles because it allows a state governor to "veto" findings made by the Secretary of the Interior. The Tribes were nonetheless denied relief. The district court held that because the remaining portion of section 2719(b)(1)(A) could not function independently in a manner consistent with the intent of Congress, the entire section 2719(b)(1)(A) must be severed from IGRA.
 
 
 4
 The Tribes appealed the district court's judgment, claiming that the district court erred by severing the entire exception provision of the statute. The United States cross-appealed, contending that the district court erred in finding the Governor's concurrence provision unconstitutional, but agreeing with the Tribes that the district court erred in severing too much of the statute. The State of Oregon, as intervenor, also cross-appealed, agreeing with the United States that the district court erred in finding the Governor's concurrence provision unconstitutional, but contending that if the requirement were unconstitutional, the court was correct in its severance order. We have jurisdiction of these appeals pursuant to 28 U.S.C. § 1291, and we affirm the judgment of the district court on different grounds. We uphold the Secretary's denial of the Tribe's trust application because § 2719(b)(1)(A) does not violate either the Appointments Clause or separation of powers principles.
 
 II.
 
 5
 The Confederated Siletz Tribes of Oregon applied to the Secretary of the Interior to have land taken in trust for the purpose of gaming. The Secretary of the Interior is authorized to take land in trust for the benefit of an Indian tribe
 
 
 6
 (1) when the property is located within the exterior boundaries of the tribe's reservation or adjacent thereto, or within a tribal consolidation area; or, (2) when the tribe already owns an interest in the land or, (3) when the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.
 
 
 7
 25 C.F.R. § 151.3(a) (authorized by 25 U.S.C. § 465).[1] Gaming on Indian land, including trust land, is governed by IGRA. IGRA was the outgrowth of several years of discussions and negotiations seeking a method to allow the states to be involved in the regulation of Indian gaming in light of the Supreme Court's decision in California v. Cabazon Band of Mission Indians, 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). See S.Rep. 446, 100th Cong., 2d Sess. 1-2, reprinted in 1988 U.S.C.C.A.N. 3071, 3071-72. Section 2719(a) of IGRA states:
 
 
 8
 Except as provided in subsection (b) of this section, gaming regulated by this chapter shall not be conducted on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988...
 
 
 9
 Section 2719(b) provides a number of exceptions to the general prohibition. The exception at issue in this case is section 2719(b)(1)(A), which reads:
 
 
 10
 (1) Subsection (a) of this section will not apply when--
 
 
 11
 (A) the Secretary, after consultation with the Indian tribe and appropriate State, and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands would be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination ....
 
 
 12
 (emphasis added.)
 
 
 13
 The Tribes first approached the Bureau of Indian Affairs ("BIA") in March 1992, with their proposal to have land taken in trust for the purpose of gaming. The land at issue is a 16-acre tract of land near Salem, Oregon, 50 miles from the Tribes' reservation. The BIA requested comments on the proposal from the County and the City of Salem. On April 20, 1992, the Governor submitted objections to the proposal.
 
 
 14
 In June 1992, the Tribes submitted their formal application to have the land taken in trust. The BIA again solicited comments from the County, the City of Salem, the Governor, and other local tribes. In October 1992, the Governor again submitted objections to the application. On November 6, 1992, the Secretary of the Interior found that the proposal was in the best interest of the Tribes and not detrimental to the community and sought the Governor's concurrence in his determination. The Governor refused to concur. On December 21, 1992, the Secretary denied the Tribes' application on the ground that the Governor did not concur in this determination. The Secretary invited the Tribes to reapply for acquisition of the land in trust for nongaming purposes.
 
 
 15
 The Tribes filed an action to challenge the denial of their application. The district court held that the language in section 2719(b)(1)(A), requiring the state governor's concurrence, violated the Appointments Clause and separation of powers principles. Confederated Tribes of Siletz Indians v. United States, 841 F.Supp. 1479, 1489 (D.Or.1994). The district court also held that section 2719(b)(1)(A) must be severed in its entirety in order to be consistent with the intent of Congress to permit gaming on such newly acquired territory only with the State's concurrence. Id. at 1490-91. It therefore denied the Tribes' appeal of the Secretary's denial of their trust application because there was no longer an exception to section 2719(a) through which they could establish gaming on newly acquired lands. Id. at 1491.
 
 III.
 
 16
 We review the constitutionality of a statute de novo. United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 747 (9th Cir.1993), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994).
 
 
 17
 When reviewing congressional enactments, such as IGRA, for constitutional infirmities, we give "great weight to the decision of Congress." Fullilove v. Klutznick, 448 U.S. 448, 472, 100 S.Ct. 2758, 2772, 65 L.Ed.2d 902 (1980). In addition, a court is obligated, whenever possible, to interpret a statute in a manner which renders it constitutionally valid. Communications Workers of America v. Beck, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988). "When [a federal court] is asked to invalidate a statutory provision that has been approved by both Houses of the Congress and signed by the President, particularly an Act of Congress that confronts a deeply vexing national problem, it should do so only for the most compelling constitutional reasons." Mistretta v. United States, 488 U.S. 361, 384, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989) (quoting Bowsher v. Synar, 478 U.S. 714, 736, 106 S.Ct. 3181, 3193, 92 L.Ed.2d 583 (1986) (Stevens, J., concurring)).
 
 IV.
 
 18
 In enacting IGRA, Congress recognized that gaming is a sensitive and controversial activity in many states. This statute attempted to accommodate the interest of the Indian tribes with the legitimate regulatory interests of the states. The provision of IGRA here at issue deals with the acquisition of land by the Secretary of the Interior to be held in trust for a tribe for gaming purposes when that land is not contiguous to its reservation. After 1987, with certain exceptions not here pertinent, an acquisition for such purposes was precluded unless the Governor of the State in which the land is located, along with the Secretary of the Interior, agrees that such acquisition would "be in the best interest of the Indian tribe and its members, and would not be detrimental to the surrounding community." 25 U.S.C. § 2719(b)(1)(A). Congress recognized the federal and state concerns and provided that both had to be satisfied by requiring action by the appropriate federal and state officials.
 
 
 19
 The separation of powers doctrine, implicit in the Constitution and well established in case law, forbids Congress from infringing upon the Executive Branch's ability to perform its traditional functions. Mistretta, 488 U.S. at 381, 109 S.Ct. at 659-60; Boeing, 9 F.3d at 749-50. The Tribes contend that the Governor's concurrence provision of IGRA is unconstitutional because it impermissibly reassigns the function of taking land in trust for Indians from the Executive Branch to state governors.
 
 
 20
 "[I]n determining whether the Act [in question] disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." Nixon v. Administrator of General Servs., 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). Although the Supreme Court has not announced a formal list of elements to be considered when determining whether a violation of the doctrine has taken place, it has consistently looked to at least two factors: (1) the governmental branch to which the function in question is traditionally assigned, see Mistretta, 488 U.S. at 364, 109 S.Ct. at 650-51; Morrison v. Olson, 487 U.S. 654, 694-96, 108 S.Ct. 2597, 2620-22, 101 L.Ed.2d 569 (1988); and (2) the control of the function retained by the branch, see Mistretta, 488 U.S. at 408-12, 109 S.Ct. at 673-75; Morrison, 487 U.S. at 692-96, 108 S.Ct. at 2619-22. In examining IGRA in light of these factors, we conclude that the provision requiring the Governor's concurrence does not violate the separation of powers doctrine.
 
 
 21
 The power to place public lands in trust for Native Americans for the purpose of gaming is not an Executive power. The Property Clause of the Constitution states that "[t]he Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. This clause gives Congress the sole power to acquire land for the Federal Government. United States v. Huckabee, 83 U.S. (16 Wall.) 414, 21 L.Ed. 457 (1872). When land is acquired in trust for the Indians, Congress, and not the President, is constitutionally empowered to set the rules and regulations for its use. See Sioux Tribe of Indians v. United States, 316 U.S. 317, 326, 62 S.Ct. 1095, 1099, 86 L.Ed.2d 1501 (1942). "[W]hile courts must eventually pass upon them, determinations under the Property Clause are entrusted primarily to the judgment of Congress." Kleppe v. New Mexico, 426 U.S. 529, 536, 96 S.Ct. 2285, 2290, 49 L.Ed.2d 529 (1975).
 
 
 22
 Moreover, Congress enacted IGRA pursuant to its powers under the Indian Commerce Clause of the United States Constitution. Seminole Tribe of Florida v. Florida, --- U.S. ----, 116 S.Ct. 1114, 1119, 1127, 134 L.Ed.2d 252 (1996). "[T]he central function of the Indian Commerce Clause is to provide Congress with the plenary power to legislate in the field of Indian affairs." Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192, 109 S.Ct. 1698, 1715, 104 L.Ed.2d 209 (1989).
 
 
 23
 Through 25 U.S.C. § 465, Congress has delegated its constitutionally derived power to acquire property for the Indians to the Secretary of the Interior. This delegation allows the Secretary to choose which land is to be taken into trust but only within the guidelines expressed by Congress. By adopting 25 U.S.C. § 2719, Congress has placed limitations on that delegation with regard to land acquired for gaming purposes without local approval. Congress has the authority to delegate limited legislative responsibilities to the Executive Branch. See Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 19, 6 L.Ed. 253 (1825) ("[C]ongress may certainly delegate to others, powers which the legislature may rightfully exercise itself.").
 
 
 24
 The Tribes assert that the Governor's concurrence provision allows Congress to undermine the President's constitutionally assigned duty to execute the laws. By allowing a state governor to "veto" the recommendation of the Secretary of the Interior, the Tribes contend that IGRA unconstitutionally prevents the Executive Branch from interpreting and enforcing the laws of the United States. We disagree.
 
 
 25
 The Tribes' assertion that deciding when and how a law is to be applied is solely an Executive power has been considered and rejected by the Supreme Court on several occasions. Congress is constitutionally able to enact legislation which is contingent upon the approval of others.
 
 
 26
 Congress may feel itself unable conveniently to determine exactly when its exercise of the legislative power should become effective, because dependent on future conditions, and it may leave the determination of such time to the decision of an Executive, or, as often happens in matters of state legislation, it may be left to a popular vote of the residents of a district to be affected by the legislation. While in a sense one may say that such residents are exercising legislative power, it is not an exact statement, because the power has already been exercised legislatively by the body vested with that power under the Constitution, the condition of its legislation going into effect being made dependent by the legislature on the expression of the voters of a certain district.
 
 
 27
 J.W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 407, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928). Such contingent legislation is not an invalid delegation of legislative authority and does not violate the separation of powers. Id.
 
 
 28
 Contingent legislation is constitutionally acceptable in many forms. In Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939), the Supreme Court was called upon to determine the constitutionality of the Tobacco Inspection Act of August 23, 1935. The Act allowed the Secretary of Agriculture to designate certain tobacco auctions as interstate tobacco markets. See 7 U.S.C. § 511(d). However, the Secretary's determination that an auction so qualified was contingent upon the concurrence of the affected farmers: "No market or group of markets shall be designated by the Secretary unless two-thirds of the growers voting [at a referendum during the preceding marketing season] favor it." Id. The Supreme Court stated that such a condition incorporated into the legislation was appropriate. "So far as growers of tobacco are concerned, the required referendum does not involve any delegation of legislative authority. Congress has merely placed a restriction upon its own regulation by withholding its operation as to a given market 'unless two-thirds of the growers voting favor it.' " Currin, 306 U.S. at 15, 59 S.Ct. at 387; see also Panama Refining Co. v. Ryan, 293 U.S. 388, 421, 55 S.Ct. 241, 248, 79 L.Ed. 446 (1935) ("The Constitution has never been regarded as denying to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities ... the determination of facts to which the policy as declared by the legislature is to apply").
 
 
 29
 By placing a condition upon when and under what circumstances a provision of a statute goes into effect, Congress does not infringe upon the Executive's ability to execute that statute. By requiring local approval, Congress is exercising its legislative authority by providing what conditions must be met before a statutory provision goes into effect. Currin, 306 U.S. at 15, 59 S.Ct. at 386-87; see also United States v. Rock Royal Co-op, Inc., 307 U.S. 533, 577-78, 59 S.Ct. 993, 1014-15, 83 L.Ed. 1446 (1939) (upholding a condition precedent requiring approval of two-thirds of producers of agricultural products);[2] Sequoia Orange Co. v. Yeutter, 973 F.2d 752, 759 (9th Cir.1992), modified 985 F.2d 1419 (9th Cir.1993) (reaffirming that the statute at issue in Rock Royal was not an invalid delegation, but rather a legitimate condition precedent); United States v. Ferry County, 511 F.Supp. 546, 552 (E.D.Wash.1981) (upholding a federal statute that allowed the Secretary to acquire land in trust for an Indian tribe only if local county officials consented).
 
 
 30
 In addition to these statutes, the Supreme Court has addressed statutes requiring approval by state courts, state legislatures, and, as in this case, state governors. See, e.g., Parker v. Richard, 250 U.S. 235, 238-40, 39 S.Ct. 442, 443-44, 63 L.Ed. 954 (1919) (upholding a provision in a federal statute which conditioned the conveyance of certain Indian lands upon the approval of a state court);[3] North Dakota v. United States, 460 U.S. 300, 302-03, n. 3, 310, 103 S.Ct. 1095, 1097-98, n. 3, 1101-02, 75 L.Ed.2d 77 (1983) (interpreting federal statutes which conditioned federal acquisition of waterfowl refuges on approval by the state legislature and state governor).[4]
 
 
 31
 The district court rejected the "contingent legislation" analysis and held that the Executive's power was undermined. The court stated that with IGRA, "Congress delegate[d] to a state official the power to veto a favorable determination by an official of the Executive Branch." Confederated Tribes, 841 F.Supp. at 1488. The court held that the fact that the governor's concurrence is made after the Secretary's finding "impermissibly undermines" the executive's authority to take care that the laws are executed properly. Id.
 
 
 32
 We conclude that the formality of which official acts first should not be determinative. The important consideration is that both officials must act. Regardless of who acts first, the effect of the provision is that the Governor must agree that gaming should occur on the newly acquired trust land before gaming can in fact take place. All parties agree that if the Secretary was prevented from considering taking land into trust for gaming purposes until the Governor approached him, there would be no constitutional problems. We see no difference between that situation and what the statute requires here.[5]
 
 
 33
 The power delegated to the Secretary to acquire Indian trust lands for gaming purposes is a legislative power. The delegation is limited by a contingent requirement of State approval. This does not undermine an executive function, it merely places restrictions on the Executive's ability to choose which land is to be taken into trust for gaming purposes--a legislative function. We therefore hold that the governor concurrence provision of IGRA does not violate the separation of powers doctrine.
 
 V.
 
 34
 We now turn to the argument that the contested provision of IGRA violates the Appointments Clause. The Constitution provides that the President shall appoint "all ... Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by Law...." U.S. Const. art. II, § 2, cl. 2. Persons "who are not appointed ... and who therefore can not be considered 'Officers of the United States' may not discharge functions that are properly discharged only by officers." Boeing, 9 F.3d at 757. The Appointments Clause serves as a guard against one branch aggrandizing its power at the expense of another branch, and preserves constitutional integrity by preventing the diffusion of appointment power. Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 878, 111 S.Ct. 2631, 2638-39, 115 L.Ed.2d 764 (1991).
 
 
 35
 The district court ruled that the Governor concurrence provision of IGRA violated the Appointments Clause by giving the Governor authority to act as an Officer of the United States without being appointed through proper channels. Confederated Tribes, 841 F.Supp. at 1486-87. The district court determined that by requiring the Governor to concur in the Secretary's decision to allow gaming on newly acquired trust land, the Governor exercised significant authority over federal government actions through a congressional grant of power. Id.
 
 
 36
 There is no question that the Governor has not been appointed as a federal officer in accordance with the Appointments Clause or that the Governor is not a federal officer in fact. It is clear the Governor is a state official. We must, however, inquire whether, under this statute, the Governor is performing duties reserved for officers of the United States. The test promulgated by the Supreme Court to assess whether persons are exercising authority that can only properly belong to appointed Officers is whether those persons "exercis[e] significant authority pursuant to the laws of the United States." Buckley, 424 U.S. at 126, 96 S.Ct. at 685. In Buckley, the Court held that statutory provisions vesting the Federal Elections Commission with the "primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights" violated the Appointments Clause because only appointed federal officers may perform such functions. Id. at 140, 96 S.Ct. at 692. Thus, the appropriate inquiries in this case are whether the Governor exercises "significant authority" under IGRA, and whether IGRA vests in the Governor "primary responsibility" for determining the applicability of IGRA's exceptions. We hold that the authority vested in the state governors through IGRA does not rise to the level of that of an officer of the United States.
 
 
 37
 The district court determined that the Governor exercised significant authority under IGRA. Because the Governor was allowed to "veto" the findings of the Secretary, the district court ruled that this authority could only be exercised by a federal officer appointed by the President. We disagree.
 
 
 38
 The subject of what constitutes significant authority under the laws of the United States has received much attention by the federal courts in recent years. In Freytag, the Supreme Court held that special trial judges exercised significant authority over enforcing the laws of the United States. Freytag, 501 U.S. at 881, 111 S.Ct. at 2640. Key to the Court's opinion was the fact that special trial judges regularly made decisions regarding discovery, trial, and discovery matters. Id. at 881-82, 111 S.Ct. at 2640-41. The Court distinguished special trial judges from special masters whose duties were temporary and episodic in nature. Id. at 881, 111 S.Ct. at 2640. Special masters, the Court held, were not officers because the master did not have the same discretion under the law given to special trial judges. Id. at 882, 111 S.Ct. at 2640-41.
 
 
 39
 In United States ex rel. Kelly v. Boeing Co., 9 F.3d 743 (9th Cir.1993), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994), this court was called upon to interpret "significant authority" in the context of qui tam relators under the False Claims Act. The Act authorized individuals to sue on behalf of the federal government for vindication of public rights. Although the Federal Government is given the opportunity to intervene in the lawsuit, the individual relator has the opportunity to continue the lawsuit even if the Government believes that such a suit is not warranted. We determined that the authority exercised by relators was not so significant as to require appointment. Id. at 758-59.
 
 
 40
 We conclude that the authority exercised by the Governor under IGRA is also not significant enough to require appointment. Under IGRA, the Governor operates on an episodic basis concurring in or rejecting the suggestion of the Secretary for the Interior regarding gaming on lands within the Governor's state. The Governor is not given the sole authority for enforcing IGRA. Instead, IGRA requires that the Secretary, a properly appointed Officer of the United States, determine the federal interests in the project. The Governor cannot have land taken in trust without the Secretary's approval.
 
 
 41
 When the Governor exercises authority under IGRA, the Governor is exercising state authority. If the Governor concurs, or refuses to concur, it is as a State executive, under the authority of state law. The concurrence (or lack thereof) is given effect under federal law, but the authority to act is provided by state law. For example, when faced with a governor's consent requirement in a federal statute authorizing federal acquisition of wetlands, the North Dakota legislature passed a law requiring the governor to obtain the affected county's recommendation before the governor was allowed to consent to the acquisition. North Dakota, 460 U.S. at 306-07, 103 S.Ct. at 1099-1100. In the present case, the consequences of the Governor's exercise of discretion under state law will affect how the Secretary of the Interior will proceed to execute IGRA. No doubt, federal law provides the Governor with an opportunity to participate in the determination of whether gaming will be allowed on newly acquired trust land. But when the Governor responds to the Secretary's request for a concurrence, the Governor acts under state law, as a state executive, pursuant to state interests. The Governor does not act with "significant authority" under federal law.
 
 
 42
 Our analysis under the "primary responsibility" aspect of our Appointments Clause analysis naturally flows from our decisions above. We hold that the Governor who exercises authority pursuant to state law does not have primary responsibility for protecting a federal interest.
 
 
 43
 IGRA does not allow a state governor to have land taken in trust by the Federal Government. Such a statute would no doubt run afoul of the Appointments Clause. Instead, IGRA is a piece of contingent legislation by which Congress conditions its consent to gaming on two events: (1) the Secretary determining that gaming on those lands would be beneficial to the tribe and not detrimental to the surrounding community; and (2) the Governor's concurring in that determination. Under this scheme, the Governor is not primarily responsible for having land taken into trust, Congress is.
 
 
 44
 It has long been the rule that Congress may delegate certain legislative functions to persons outside of the Legislative Branch of government. See, e.g., Panama Refining Co., 293 U.S. at 420-21, 55 S.Ct. at 248-49; Wayman, 23 U.S. (10 Wheat.) at 43. However, for such a delegation to be permissible, Congress must give specific guidelines to the delegee as to when the statute becomes effective. The general delegation of power to the Executive to take land into trust for the Indians is a valid delegation because Congress has decided under what circumstances land should be taken into trust and has delegated to the Secretary of the Interior the task of deciding when this power should be used. See Sioux Tribe of Indians, 316 U.S. at 325-26, 62 S.Ct. at 1098-99; City of Sault Ste. Marie v. Andrus, 458 F.Supp. 465, 473 (D.D.C.1978). Prior to 1988, the Secretary had the sole authority to take land in trust for the purpose of gaming. The adoption of IGRA limited the delegation of congressional power by making that delegation conditional on the concurrence of state governors in certain circumstances.
 
 
 45
 Because Congress has given guidelines to the Secretary regarding when land can be taken in trust, the primary responsibility for choosing land to be taken in trust still lies with Congress. The Secretary is not empowered to act outside of the guidelines expressed by Congress. Similarly, the Governor has a limited role to play in the scheme.
 
 
 46
 We stated in regards to qui tam relators,
 
 
 47
 The fact that relators sue in the name of the government does not vest them with any governmental powers; they conduct litigation under the FCA with only the resources of private plaintiffs. Furthermore, relators have no greater authority to enforce the FCA than does the Attorney General, and under the terms of the statute must yield to the government's assumption of "primary responsibility" when it elects to intervene in a qui tam action.
 
 
 48
 Boeing, 9 F.3d at 758. We concluded, "the qui tam scheme does not threaten the interest in preventing the exercise of unchecked or unbalanced government power which underlies the Appointments Clause." Id.
 
 
 49
 The gubernatorial concurrence provision similarly meets the restrictions of the Appointments Clause. The Governor's authority under IGRA extends only to making a single determination--which is unlikely to arise often in a particular state. This narrow concurrence function does not impermissibly undermine Executive Branch authority, when exercised by the Governor as a state officer, in the performance of a state function, under an express delegation of congressional power to control Indian lands.
 
 
 50
 Because of our holding in this case, we do not reach the issue of severability.
 
 
 51
 AFFIRMED.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Section 465 states:
 The Secretary of the Interior is hereby authorized, in his discretion, to acquire, through purchase, relinquishment, gift, exchange, or assignment, any interest in lands, water rights, or surface rights to lands, within or without existing reservations, including trust or otherwise restricted allotments, whether the allottee be living or deceased, for the purpose of providing land for the Indians.
 
 
 [2]
 [N]o order issued pursuant to this subsection shall be effective unless the Secretary of Agriculture determines that the issuance of such order is approved or favored:
 (A) By at least two-thirds of the producers ..., or
 (B) By producers who ... have produced for market at least two-thirds of the volume of such commodity produced for market....
 Agriculture Marketing Agreement Act of 1937, § 8c(9), 50 Stat. 246 (codified as amended 7 U.S.C. § 608c(8)).
 
 
 [3]
 [T]he death of any allottee ... shall operate to remove all restrictions upon the alienation of said allottee's land; Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee
 Act of May 27, 1908, § 9, 35 Stat. 312.
 
 
 [4]
 The Conservation Act authorized the Secretary of the Interior to acquire land for use as "inviolate sanctuaries for migratory birds," but the state in which the land is located must "have consented by law to the acquisition." 16 U.S.C § 715e. The statute providing a source of funds for the land acquisition also provided that "[n]o land shall be acquired with moneys from the migratory bird conservation fund unless the acquisition thereof has been approved by the Governor of the State or appropriate State agency." 16 U.S.C. § 715k-5
 
 
 [5]
 We note that the statutes at issue in Currin and Rock Royal do not specify whether the individual farmers or the Secretary of Agriculture should decide first. We find the order of the decisions irrelevant to their holdings