State of NEVADA, Plaintiff,

v.

The UNITED STATES of America; Department of the Treasury; Paul H. O'Neil, Secretary of the Treasury; Department of the Interior; Gail Norton, Secretary of the Interior; United States Bureau of Indian Affairs; Neal McCaleb, Assistant Secretary for Indian Affairs; Robert Hunter, Superintendent, Bureau of Indian Affairs, Western Nevada Agency; Fallon Paiute–Shoshone Tribes; Fallon Paiute Shoshone Business Council; Fox Peak Economic Development Corporation, Defendants.

No. CV–N–01–058–ECR–RAM.

United States District Court, D. Nevada.

Sept. 6, 2002.

Ronda Moore, Paul Taggart, Nevada Attorney General's Office, Carson City, NV, for State of Nevada.

Steven H. Chestnut, Marc D. Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, Gordon Depaoli, Woodburn & Wedge, Reno, NV, for Fallon Paiute Shoshone Tribes.

Steven H. Chestnut and Marc D. Slonim, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, Gordon Depaoli, Woodburn & Wedge, Reno, NV, for Fox Peak Economic Development Corporation.

Brian Morris, Reno, Gail Norton, Paul H. O'Neill, Lenora Rogers, Marcelle Rusk, Rulan Stands, U.S. Bureau of Indian Affairs, Steven H. Chestnut, Ziontz, Chestnut, Varnell, Berley & Slonim, Seattle, WA, Gordon Depaoli, Woodburn & Wedge, Reno, NV, for Donna Cossette, Barbara Culbertson, Susan Willie, Valerie Henry, Robert Hunter, Marie Loper, Rosanna Marrujo, James H. McDivitt and Alvin Moyle.

Anne Traum, Federal Public Defender's Office–LV, Los Vegas, NV, for U.S. Interior Department and U.S. Treasury Department.

## ORDER

EDWARD C. REED, Jr., District Judge.

## BACKGROUND

This case presents a challenge to P.L. 101–618 by the State of Nevada. Congress enacted P.L. 101–618 in 1990 to settle the claims of the Fallon–Paiute Shoshone Indians for failure to carry out various obligations concerning land and water allotments. S. Rep. 101–555, 104 Stat.3289 (1990). The following explanation is taken from that legislative history.

The 1887 General Allotment Act provided for public domain allotments of land to the Shoshone and Paiute Indian Tribes. These allotments were located in the area that was designated to become the Newlands Reclamation Project and, therefore, when the project was authorized the United States entered into agreements with the recipients of the allotments. The bargain struck was that the recipients would relinquish the land given to them under the 1887 Act in exchange for 10–acre parcels with irrigation facilities and water rights. Although the United States eventually created a reservation for the Tribes, the original Fallon Indian Reservation, the majority of those lands were not provided with irrigation from the Newlands Project.

In 1978, the United States, recognizing that it had failed in its performance of its contract obligations, added additional acreage to the reservation and made it a priority to bring 1,800 acres into cultivation. As of 1990, the Department of the Interior, despite directives from the United States, had done nothing to satisfy this mandate. Because of these repeated failures the Tribes sued the United States

In exchange for the Tribes' release of their claims for violation of the 1978 Act and dismissal with prejudice of their pending claims, the United States enacted the Settlement Act. The Act established a Settlement Fund which specified various purposes for which the income could be used. Of importance to this lawsuit is the fact that the Settlement Act authorized the use

of income for "acquisition of lands, water rights, or related property interests located outside the Reservation from willing sellers and improvement of such lands." § 102(C)(1)(e). The Act also mandated that:

Title to all lands, water rights and related property interests acquired under section 102(C)(1)(e) within the counties of Churchill and Lyon in the state of Nevada shall be held in trust by the United States for the tribes as part of the Reservation, provided that no more than 2,415.3 acres of such acquired lands and no more than 8,453.55 acre feet per year of such water rights shall be held in trust by the United States and become part of the Reservation under this subsection.

§ 103(A).

Using money from the Settlement Fund, the Tribe purchased 36 acres within the City of Fallon and then applied to the Secretary of the Interior to take the land into trust. The Secretary determined that the land met the requirements put forth in section 103(A) and the land became part of the reservation; held in trust by the United States. The land therefore, was no longer subject to state laws or, more importantly, taxes and development regulations. After the Tribe purchased the land it constructed a gas station on part of the land and began to make plans for other development.

This is not the first time P.L. 101–618 has been challenged. In *Churchill County v. United States,* the City of Fallon, concerned about the development, sued claiming that P.L. 101–618 was invalid and that the United States had violated regulations that govern the taking of land into trust. 199 F.Supp.2d 1031 (D.Nev.2001). We held that P.L. 101–618 created a mandatory acquisition requirement and that the regulations governing discretionary trust land did not apply. In that case we held that the action of the United States taking the land into trust was valid.

In *Fallon–Paiute–Shoshone Tribe v. City of Fallon,* 174 F.Supp.2d 1088 (D.Nev.2001), CV–N–99–0270–ECR the Tribe sued the City of Fallon because of a failure on the part of the City to provide utilities and sewer service to the 36 acre property. We granted partial summary judgment to the Tribe on the 42 U.S.C. § 1983 and equal protection claims. In that order we reaffirmed our finding that P.L. 101–618 creates a mandatory duty on the part of the United States to accept land into trust if it meets the requirements of section 103(F)(2).

Now the State of Nevada brings this action against the United States and the Tribe. The State argues that: (1) the United States failed to comply with a Memorandum of Understanding; (2) the United States failed to comply with 25 C.F.R. § 151; (3) the United States failed to comply with the National Environmental Policy Act (NEPA); (4) P.L. 101–168 is an unconstitutional delegation of legislative authority to a nonfederal entity; (5) P.L. 101–168 is a standardless delegation of legislative authority to the executive branch; (6) P.L. 101–168 violates the Constitution because the United States cannot take land into trust for the Indians without the consent of the State.

The Tribal Defendants [1] and the United

---

**1.** The term Tribal Defendants refers to the Fallon–Paiute–Shoshone Tribe, the Fallon– Paiute Shoshone Business Council, and Fox Peak Development Corporation.

States[2] filed motions to dismiss: (# 29) and (# 30) respectively. The State of Nevada opposed (# 38) and the Tribal Defendants and United States replied: (# 43) and (# 44) respectively.

## ANALYSIS

### A. Motion to Dismiss

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will only be granted if it appears beyond doubt that a "plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996), *see also Argabright v. U.S.*, 35 F.3d 472, 474 (9th Cir. 1994) (stating that dismissal for failure to state a claim is proper only if it is clear that no relief may be granted under any set of facts that could be proved consistent with the allegations of the complaint). In other words, we must determine whether, if the factual averments of the complaint were proved, they would establish a cause of action. *Argabright*, 35 F.3d at 474; *National Wildlife Federation v. Espy*, 45 F.3d 1337, 1340 (9th Cir.1995). All allegations of material fact are taken as true and construed in the light most favorable to plaintiff. *In re Stac Electronics Securities Litig.*, 89 F.3d 1399, 1403 (9th Cir.1996). Review is limited to the contents of the complaint; if matters outside the pleadings are submitted, the motion to dismiss may be treated as one for summary judgment if the district court relies on the materials. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir.1996); *Allarcom Pay Television, Ltd. v. General Instrument Corp.*, 69 F.3d 381, 385 (9th Cir.1995). On a motion to dismiss, we presume that general allegations embrace those specific facts that are necessary to support the claim. *Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. 2130 (quotation omitted). However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss. *In re Stac Electronics Securities Litig.*, 89 F.3d at 1403.

### B. Failure to Comply with the Memorandum of Understanding

█ The State asserts that it is entitled to relief because the BIA failed to comply with the Memorandum of Understanding ("MOU") that governed applications to take land into trust status. The MOU contemplates discussions between the BIA and the State before land is taken into trust.

The State asserts that the MOU was entered into to develop a consulting relationship between the State and the BIA that would apply to all lands taken into trust, regardless of whether the Secretary exercised discretion to accept the lands into trust or followed a mandate from Congress.

The United States and the Tribe assert that the MOU was simply a document that explained each party's obligations for land taken into trust under the discretion of the Secretary. The United States and the Tribe argue that the MOU would not apply to land taken into trust pursuant to an exercise of discretion because the MOU could not impose any obligations on the BIA that were not contained in section 151 unless it was adopted pursuant to the Administrative Procedure Act ("APA").

**2.** The term United States refers to the United States, the Department of the Treasury, Paul O'Neil, the Department of the Interior, Gail Norton, the United States Bureau of Indian Affairs, Neal McCaleb, and Robert Hunter.

On its face the MOU appears to only apply to discretionary trusts. The MOU references 25 C.F.R § 151 multiple times; that section applies to lands taken into trust on a discretionary basis.

The State presents an affidavit from a Deputy Attorney General that indicates that the State believed that the MOU would apply to all trust lands, because the BIA never indicated an intent to exempt lands taken into trust on a mandatory basis from the MOU.

However, we do not find persuasive the fact that the BIA never explicitly made a distinction between lands taken into trust pursuant to the Secretary's discretion and lands for which the Secretary had no discretion. The MOU states clearly that one of its objectives is to meet the requirements of 25 C.F.R. § 151. It also states that "the decision to place land in trust for the benefit of an Indian Tribe is committed to the discretion of the Secretary of the Interior after consideration of the land acquisition criteria found in 25 Code of Federal Regulations Part 151 . . . ." By its own terms the MOU only clarifies the responsibilities of the State and the BIA with respect to lands acquired into trust under the discretion of the Secretary.

The Tribe presents the further argument that the MOU could not apply to lands held in trust pursuant to a mandate from Congress, because the MOU would then apply the requirements of section 151 to these lands, contrary to the explicit language of the regulations. We agree. The MOU states that "[a] copy of 25 C.F.R. Part 151 is attached and made a part of this MOU . . . ." clearly indicating that the lands covered by the MOU are the same lands to which section 151 applies.

In addition if the State is correct, the BIA would have agreed to a position in direct contradiction of its regulations; that is by MOU the BIA would have applied section 151 to all acquisitions of land into trust. A change in policy cannot occur without following the requirements of the Administrative Procedure Act. 5 U.S.C. § 551 et seq. To refute this argument the State takes the position that the MOU is simply an interpretive document and does not place any additional mandatory requirements on the BIA and the Secretary.

The State's position works only to defeat its cause of action. If the MOU is simply an interpretive document, the State has not presented any reason as to why it would have a cause of action based on a non-binding document.

We find that the purpose of the MOU was to designate a State agency with which the BIA would coordinate to satisfy the requirements of 25 C.F.R. § 151 concerning lands taken into trust pursuant to the Secretary's discretion. Therefore, the MOU does not apply trust acquisitions authorized by a mandate from Congress, such as in this case, and the motions to dismiss will be granted as to the claim of violation of the MOU.

## C. Failure to Comply with 25 C.F.R. § 151

To the extent that the State is challenging the failure of the BIA to comply with all of section 151 we incorporate our previous reasoning from *Churchill County v. United States*, 199 F.Supp.2d 1031 (D.Nev. 2001), which we have reviewed and find to be still accurate and applicable here.

The regulations in 25 C.F.R. § 151.10 apply only to those instances where taking the land into trust for a tribe is a discretionary function of the Secretary. The statute at issue in this case provides that

the land "...**shall** be held in trust by the United States for the tribes...." (emphasis added). Shall is a mandatory term, indicating the lack of discretion on the part of the Secretary. *See e.g., Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed.2d 62, (1998) ("[T]he mandatory 'shall' ...creates an obligation impervious to ...discretion"); *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) (using "shall" in a statute expressed Congress' "intent that forfeiture be mandatory in cases where the statute applied."); *Black's Law Dictionary*, at 1375 (6th ed. 1990) ("As used in statutes...[shall] is imperative or mandatory."). Therefore, once the requirements of section 103(A) were met, the Secretary was required to accept the land into trust for the tribe, until the maximum allotment of 2,415.3 acres had been added to the reservation. The Secretary was not required to comply with section 151 requirements. The motions to dismiss will be granted on the claim that the Secretary failed to comply with section 151.

The State also alleges that the failure of the BIA to comply with the specific publishing requirement in section 151 mandates that the trust acquisition is invalid. Section 151.12 provides that the BIA must publish in the Federal Register or a local newspaper any pending trust acquisitions. This requirement exists to give state and local governments a chance to challenge the trust acquisition. It is undisputed that the BIA did not publish this trust acquisition. It is also undisputed that the requirement of publication applies to land taken into trust pursuant to the discretion of the Secretary and pursuant to a mandate from Congress.

The United States and the Tribe argue that the failure to publish is harmless error because the State has had a chance to challenge the trust acquisition; judicial review has not been foreclosed. This is true. Unlike cases where the United States or its agencies have claimed that judicial review is unavailable, the BIA has not stated in this case that it believes the decision of the Secretary of Interior to take the land into trust is unreviewable. Rather, the position is that the acceptance of land into trust is mandated and, therefore, that the Secretary did not have to comply with the myriad of regulations surrounding acquisitions of land under the discretion of the Secretary.

The combination of the fact that the State can and has sought judicial review of the Secretary's action leads us to conclude that the failure to publish is harmless error. The motions to dismiss will be granted on the claim of failure to publish the acquisition of the trust land.

### D. Failure to Comply with the National Environmental Policy Act

■ The State alleges that the trust acquisition is invalid because the United States did not comply with the requirements of the National Environmental Policy Act ("NEPA"). NEPA applies to the actions of federal agencies, and requires the preparation of an Environmental Impact Statement (EIS) when a federal agency engages in a major federal action that significantly affects the quality of the human environment. 42 U.S.C. § 4332(2)(C). NEPA applies only to discretionary agency actions, not to ministerial or mandatory actions. *See e.g. Sierra Club v. Babbitt*, 65 F.3d 1502, 1512 (9th Cir.1995). A careful reading of the amended complaint and the papers filed by the parties indicates that there are two NEPA challenges presented. The first is the challenge that the Secre-

tary failed to comply with NEPA before taking the land into trust. The second is that the Secretary failed to comply with NEPA before approving and funding the construction of the gas station and other development on the property.

We have already determined that the decision to take the land into trust was a mandatory act. Because NEPA does not apply to mandatory acts the acceptance of the land into trust did not trigger the NEPA requirements. This is so even though the Secretary retained the discretion to determine what kind of local regulations could apply on the land. That determination was made after the land was taken into trust, and did not affect the Secretary's mandatory acceptance of the land. The motion to dismiss will be granted as to this claimed violation of NEPA.

■ The second NEPA issue challenges whether the construction of the gas station violated NEPA because the Tribe prepared a deficient Environmental Assessment, or because the United States failed to prepare an EIS. The act of approving a lease constitutes a major federal action and the requirements of NEPA must be followed. *Davis v. Morton,* 469 F.2d 593, 597 (10th Cir.1972). The United States moved to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(1)claiming that because there was no federally approved lease there was no final agency action and, therefore, NEPA was not triggered.

■ A 12(b)(1) motion can be made in one of two ways. The motion can challenge the sufficiency of the pleadings to support subject matter jurisdiction (a facial challenge), or it can challenge the actual existence of jurisdiction (a factual attack) by way of a "speaking motion." In the latter case, the judge may consider outside evidence and resolve factual disputes. *Berardinelli v. Castle & Cooke, Inc.,* 587 F.2d 37, 39 (9th Cir.1978); *See also, Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983). (holding that unlike a motion to dismiss for failure to state a claim, under Fed.R.Civ.P. 12(b)(6), a court can hear outside evidence regarding a motion to dismiss for lack of subject matter jurisdiction.).

If the 12(b)(1) is a facial challenge, the pleadings are taken as true for the purposes of the motion. *See Jetform Corp. v. Unisys Corp.,* 11 F.Supp.2d 788, 789 (D.Va.1998) (holding that if the challenge is that the complaint fails to state sufficient facts to support subject matter jurisdiction the analysis is similar to a 12(b)(6) motion, whereby the facts in the complaint are assumed to be true). However, if the movant challenges the existence of subject matter jurisdiction, the pleadings are treated as evidence on the issue. Indeed, in this type of 12(b)(1) motion, the requirement is not unlike that for summary judgment, where the non-moving party cannot rest on the allegations in the complaint, but must present evidence to defeat the motion. *Ohio Nat. Life Ins. Co. v. United States,* 922 F.2d 320 (6th Cir.1990); *Trentacosta v. Frontier Pacific Aircraft Indus., Inc.,* 813 F.2d 1553, 1558 (9th Cir.1987) (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1363 at 653–54 (1969)); *Tolan v. United States,* 176 F.R.D. 507, 510 (D.Pa.1998) (holding that the court may review evidence and resolve factual disputes regarding jurisdictional allegations in a 12(b)(1) motion).

The United States' motion to dismiss challenges the existence of subject matter jurisdiction, not simply the adequacy of the complaint's allegations. Under this analy-

sis, there is no presumption of truthfulness of the State's allegations, and the burden is on the State to establish our jurisdiction. *See Thornhill Publishing Co.,* 594 F.2d at 733 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977)).

To support its position the State submitted the Tribe's "Development Standards Handbook: Fox Peak Centre–Fallon, Nevada." This development plan contemplates a lease or some other arrangement that allows for development of this parcel. The United States has submitted an affidavit from Mr. Wayne Nordwall indicating that no federally approved lease exists. In addition, the Tribal defendants submitted a declaration of Mr. Alvin Moyle who testifies that although plans to lease the land to Fox Peak were contemplated, those plans were never finalized.

The burden is on the State to establish our jurisdiction and it has not met this burden. The evidence indicates that although a lease was contemplated no lease was ever obtained. Therefore, we find that we lack jurisdiction to consider the State's NEPA challenge to the development of the site. The motion to dismiss will be granted on this NEPA claim as well.

*E. Violation of the Non–Delegation Doctrine*

The State presents two delegation arguments. First, it argues that if P.L. 101–618 authorizes the Tribe to select the lands to be acquired into trust by the United States it is an unconstitutional delegation of legislative authority to a nonfederal officer. Second, the state argues that P.L. 101–618 contains no "intelligible principles" governing selection of the lands and

is therefore a standardless delegation of legislative authority and violates the nondelegation doctrine. We address each argument in turn.

1. Appointments Clause

■ The Appointments Clause provides that the "President shall appoint all ... Officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law...." U.S. Const. art. II § 2 cl. 2. "Persons who are not appointed ...and who therefore may not be considered Officers of the United States may not discharge functions that are properly discharged only by officers." *Confederated Tribes of Siletz Indians of Oregon v. United States,* 110 F.3d 688, 696 (9th Cir.1997)(internal quotations and citation omitted).

The State asserts that because the Tribe is allowed to choose the actual acreage selection of the land P.L. 101–618 gave so much authority to the Tribe that it violated the Appointments Clause.

When a non-federal person or entity is involved the question is whether that person or entity exercises so much authority that it must be appointed pursuant to the Appointments Clause. *United States ex rel. Kelly v. Boeing Co.,* 9 F.3d 743, 757 (9th Cir.1993). Here, the Tribal defendants do not "exercise significant authority under the laws of the United States." *Buckley,* 424 U.S. at 126, 96 S.Ct. 612. Similarly to the Governor's role in *Confederated Tribes,* the Tribal defendants are not given the "sole authority" for enforcing P.L. 101–618.

In fact, the duty to execute the law remains with the United States at all times. The determination of whether the

land purchase by the Tribal defendants complies with the requirements of P.L. 101–618, established by Congress, is the duty of the Secretary. *See Confederated Tribes,* 110 F.3d at 698 ("[b]ecause Congress has given guidelines to the Secretary regarding when land can be taken into trust, the primary responsibility for choosing land to be taken in trust still lies with Congress.").

The Tribal defendants could use Settlement Act funds to purchase lands that would not meet the requirements for the land to be taken into trust. It is the determination that the lands meet the requirements, rather than the actual purchase of land, that is the federal authority, and this authority is exercised only by the Secretary. Therefore, we find that P.L. 101–618 does not violate the Appointments Clause.

## 2. Intelligible Standard

■ The idea of the non-delegation doctrine stems from the concept of separation of powers; the idea that each branch of the federal government has its own independence. *Mistretta v. United States,* 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Congress cannot delegate its legislative authority to the executive branch. *Id.* However the modern view of the non-delegation doctrine takes a practical approach, and the courts have recognized that in order to have a functioning federal government Congress may seek assistance from other branches of the federal government. *Id.* This assistance will not be held unconstitutional as long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform, such legislative action is not a forbidden delega-

tion of legislative power": *Whitman v. American Trucking Assoc. Inc.,* 531 U.S. 457, 472, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001); *Mistretta,* 488 U.S. at 372, 109 S.Ct. 647. The Supreme Court held in *American Power & Light Co. v. SEC,* that it was "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

■ In this case P.L. 101–618 does not represent an unconstitutional delegation of legislative power. First, the plain language of the statute gives explicit standards to the Secretary. There are three requirements to place land into trust: (1) the land must be purchased with the settlement funds; (2) the land must be in Churchill or Lyon County, Nevada; and (3) the amount of land added to the reservation must be not more than 2,415.3 acres, and the amount of water rights not more than 8,453.55 acre feet. Sec. 103(A). If these conditions are met, the Secretary places the land in trust. The legislature has given standards to the Secretary that are unambiguous and well within the boundaries of acceptable delegation to an administrative agency.

Second, the legislative history of the act clearly explains the goal of Congress in passing the law. Unlike some laws where the purpose is not entirely clear, P.L: 101–618 was enacted for a very specific reason; to remedy the fact that the United States had not satisfied its obligations to the Tribes under various statutes. P.L. 101–618 and its legislative history provide clearly intelligible principles and is very easy to determine if the will of Congress was followed.

In fact, it appears that the process worked as planned. Congress passed a

law that appropriated money for the Tribe to purchase land. The Tribe purchased land and presented it to the Secretary for a determination as to whether the lands met the requirements of section 103(A). The Secretary determined that the land met the requirements of the statute and, therefore, was required by law to accept the land into trust. There was no legislative authority exercised by the Secretary or the Tribe. Simply because Congress did not determine exactly the metes and bounds of the reservation does not make P.L. 101–618 an impermissible delegation of legislative authority.

To survive a delegation challenge judicial review must be available. *See e.g. State of South Dakota v. United States Dep't of Interior,* 69 F.3d 878 (8th Cir. 1995) (stating the position that failure to give judicial review implicates a non-delegation problem). However, this litigation demonstrates that although the State cannot challenge the specific choice of land, the State is able to challenge the scheme by which the land is taken into trust. P.L. 101–618 does not represent an unconstitutional delegation of legislative authority. Therefore, the motions to dismiss will be granted on this claim.

## F. Enclave Clause/Superintendence

The State of Nevada also argues that the designation of the property as trust property is an unlawful assertion of federal superintendence. The State asserts that the consent of the State should be required before the federal government may withdraw the land from the State's jurisdiction. This is not the law.

■ It is well established that the Federal government has plenary authority over both acquisition of federal property and Indian affairs. U.S. Const. Art. IV § 3 cl. 2 ("the Congress shall have power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States."). Congress can acquire land for Indian reservations and impose federal regulations without the consent of the state. *Sioux Tribe Of Indians v. United States,* 316 U.S. 371 (1942). Further, the Indian Commerce Clause gives Congress "plenary power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico,* 490 U.S. 163, 192, 109 S.Ct. 1698, 104 L.Ed.2d 209 (1989). The ability of Congress to acquire lands cannot depend upon the consent of a state. *Kohl v. United States,* 91 U.S. 367, 23 L.Ed. 449 (1876).

The State is correct that the Enclave Clause, U.S. Const. Art. 1 § 8 cl. 17, allows a state to retain jurisdiction over the Federal lands within its territory. However, in *Kleppe v. New Mexico,* the Supreme Court reaffirmed the principle that when a state law conflicts with a federal law, under the Supremacy Clause the federal law overrides any conflicting state laws. 426 U.S. 529, 543, 96 S.Ct. 2285, 49 L.Ed.2d 34 (1976). In the face of this authority we do not find that there could be any support for the State's argument that its consent was required before the land was taken into trust. The motions to dismiss will be granted as to the claim that the taking of land into trust violated the enclave clause and was an improper exercise of federal superintendence.

***IT IS THEREFORE HEREBY ORDERED THAT,*** the motions to dismiss filed by the United States (# 30) and the Tribal Defendants (# 29) are ***GRANTED.*** The clerk shall enter judgment accordingly.